# UNITED STATES DISTRICT COURT

# DISTRICT OF MINNESOTA

---

SUSAN A. NEWMAN,                                        Civ. No. 09-2866 (JRT/JJK)

　　　　　　　　　　　　Plaintiff,

v.                                                                  **MEMORANDUM OPINION
                                                                        AND ORDER**

STRYKER SALES CORPORATION,
Michigan Corporation, and STRYKER
CORPORATION, Michigan Corporation,

　　　　　　　　　　　　Defendants.

---

Heather A. Brann, Leslie W. O'Leary, Michael L. Williams, and
Thomas B. Powers, **WILLIAMS LOVE O'LEARY & POWERS, P.C.,**
9755 S.W. Barnes Road, Suite 450, Portland, OR, 97225; Laura B. Kalur,
**KALUR LAW OFFICE**, 9755 S.W. Barnes Road. Suite 450, Portland,
OR, 97225; Richard A. Lockridge and Yvonne M. Flaherty,
**LOCKRIDGE GRINDAL NAUEN P.L.L.P.**, 100 Washington Avenue
South Suite 2200, Minneapolis, MN, 55401, for plaintiff.

Timothy P. Griffin and Brian W. Thomson, **LEONARD STREET AND
DEINARD, PA**, 150 South Fifth Street, Suite 2300, Minneapolis, MN,
55402, for defendants.

Plaintiff Susan A. Newman ("Newman") brought this action against Stryker

Corporation and Stryker Sales Corporation (collectively, "Stryker")[1] claiming strict

product liability (defective design and failure to warn) and negligence arising out of

alleged injuries she sustained from using a medical device designed, manufactured, and

---

[1] Stryker Sales Corporation is a wholly owned subsidiary of Stryker Corporation.  (Defs.'
Mem. at 12 n.5, Docket No. 15.)

distributed by Stryker.[2]  (First Am. Compl. ¶¶ 9–22, Docket No. 2.)  Stryker brought the instant motion to transfer venue pursuant to 28 U.S.C. § 1404(a) and to dismiss Newman's claim for negligence.  (Docket No. 13.)  For the reasons stated below, the Court denies the motion to transfer and grants the motion to dismiss without prejudice.

## BACKGROUND

Newman underwent shoulder surgery twice, on December 12, 2006 and June 12, 2007, in Canton, Ohio.  (First Am. Compl. ¶ 5, Docket No. 2.)  Dr. Gerald Klimo, her orthopedic surgeon, implanted Stryker's "pain pump" into Newman's shoulder to administer anesthetic drugs directly into her shoulder joint following both surgeries.  (*Id.* ¶¶ 5–6.)  Newman alleges that the use of the pain pump was a substantial contributing cause to an "irreversible, disabling, and extremely painful condition" called chondrolysis with which she was diagnosed in 2008.  (*Id.* ¶ 10; *see also id.* ¶¶ 5, 15.)

According to Newman, although Stryker "knew or reasonably should have known that [its] pain pumps were unreasonably dangerous and defective when used as directed and as designed[,]" and despite a lack of approval by the Food and Drug Administration ("FDA") to use the pain pumps in the shoulder joint space, Stryker failed to provide adequate warnings about the product's dangerousness or instructions for the safe use of the pain pump in shoulders.  (*Id.* ¶ 17; *see also* ¶¶ 14, 18.)

---

[2] Newman also references a breach of implied warranty in the introductory paragraph of her First Amended Complaint.  (¶ 1, Docket No. 2.)  Newman only asserts the strict product liability and negligence claims, however, as numbered claims for relief with specific, underlying factual allegations.  (*Id.* ¶¶ 13–20.)

Newman is a resident of Ohio, where her alleged injuries occurred. (*Id.* ¶¶ 4–5.) Stryker is a Michigan corporation with its principal place of business in Michigan which conducts business in Minnesota. (*Id.* ¶ 7.) Newman filed suit in United States District Court for the District of Minnesota on October 14, 2009. (Compl., Docket No. 1.) Her case is one of eighty regarding alleged injuries from pain pumps filed in this district, forty of which are before this Court.

On November 16, 2009, Stryker filed a motion to transfer Newman's case to the United States District Court for the Northern District of Ohio. (Docket No. 13.) It also moved to dismiss Newman's common law negligence claim as abrogated under Ohio law. (*Id.*) Proceedings in this and other pain pump cases in this district were stayed on January 26, 2010, while the United States Judicial Panel on Multidistrict Litigation ("JPML") considered whether to consolidate pain pump cases from districts across the country for centralized pretrial proceedings. (*See* Order Staying Case, Docket No. 35.) The JPML denied the motion for centralization on May 5, 2010, *see In re Ambulatory Pain Pump-Chondrolysis Prods. Liab. Litig.*, MDL No. 2139, 2010 WL 1790214 (Jud. Pan. Mult. Lit. May 5, 2010), and the stay was lifted on June 3, 2010. (Order, Docket No. 38.) The instant motions are now ripe for disposition.

## ANALYSIS

### I.    MOTION TO TRANSFER

Twenty eight U.S.C. § 1404(a) provides, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any

other district or division where it might have been brought." The purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense[.]" *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quotations omitted). Venue is proper in both this district and the proposed transferee district. (*See* First Am. Compl. ¶ 7, Docket No. 2); 28 U.S.C. §§ 1391(a)(1), (c) (venue proper where the defendant is subject to personal jurisdiction). Accordingly, this Court enjoys "much discretion" in deciding whether a venue transfer under § 1404(a) is appropriate. *Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 697 (8th Cir. 1997).

The factors enumerated in § 1404(a) guide the Court's analysis: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." *Travel Tags, Inc. v. UV Color, Inc.*, 690 F. Supp. 2d 785, 792 (D. Minn. 2010) (citing *Terra Int'l*, 119 F.3d at 691). Evaluation of a transfer motion, however, is not limited to the statutory factors but "require[s] a case-by-case evaluation of the particular circumstances at hand[.]" *Terra Int'l*, 119 F.3d at 691. It is the moving party's burden to show that the balance of all relevant factors "'strongly favors' transfer." *Travel Tags*, 690 F. Supp. 2d at 792 (quoting *Brockman v. Sun Valley Resorts, Inc.*, 923 F. Supp. 1176, 1179 (D. Minn. 1996)); *see also Austin v. Nestle USA, Inc.*, 677 F. Supp. 2d 1134, 1137 (D. Minn. 2009) ("A heavy burden rests with the movant to demonstrate why a case should be transferred.") (quotation omitted).

### A.     Convenience of the Parties

The first factor, the convenience of the parties, does not strongly favor transfer. Stryker must establish that "[its] inconvenience substantially outweighs the inconvenience that plaintiff would suffer if venue were transferred." *Nelson v. Soo Line R.R. Co.*, 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999).

"The logical starting point" for evaluating the parties' convenience "is a consideration of [the parties'] residences in relation to the district court chosen by the plaintiff and the proposed transferee district." *Facilitec Corp. v. Omni Containment Sys., LLC*, No. Civ. 03-3187, 2003 WL 21781914, at *1 (D. Minn. July 31, 2003) (quotation omitted). In another pain pump case, *Ivey v. McKinley Med., LLC., et al.*, No. 08-cv-6407, slip op. at 6–7 (D. Minn. Dec. 14, 2009), this Court denied a motion to transfer venue where all but one of six defendants' principal places of business were "significantly closer" to Minnesota than to the proposed transferee district. Stryker is not incorporated or headquartered in Minnesota, but rather in Michigan, where it asserts that "[a]ll of [its] employees and documents are located[.]" (Defs.' Reply at 5, Docket No. 46; *see also* Defs.' Mem. at 4–5, Docket No. 15). Unlike the states of residence of most of the *Ivey* defendants, Michigan is closer to Ohio than to Minnesota. This fact supports Stryker's contention that this district is somewhat more inconvenient to it than Ohio.

In *Ivey*, however, this Court considered "the fact that [it was] hearing multiple pain pump cases, including several involving the defendants" as suggestive that "it may be more convenient for defendants to litigate in Minnesota." Slip op. at 7. That factor is

present here as well. Even if this particular case were transferred to Ohio, Stryker would continue to defend against numerous other pain pump cases in this district and specifically before this Court. *See, e.g.*, *Huggins et al. v. Stryker Sales Corporation et al.*, Civil No. 09-1250 (D. Minn. filed May 28, 2009); *Forslund v. Stryker Corp. et al.*, Civil No. 09-2134 (D. Minn. filed Aug. 13, 2009); *Prettyman v. Stryker Sales Corp., et al.*, Civil No. 09-2794 (D. Minn. filed Oct. 7, 2009); *Fielding v. Stryker Sales Corp. et al.*, Civil No. 09-2865 (D. Minn. filed Oct. 14, 2009).

Stryker avers that this district's initial designation of pain pump cases as "related" has not proven convenient, and that different plaintiffs' requests to consolidate these cases have been repeatedly denied. (Defs.' Reply at 5-6); *see also In re Ambulatory Pain Pump*, 2010 WL 1790214, at *2 (describing prior consolidation denial). In light of the JPML's denial of consolidation, the Magistrate Judge denied the consolidation motion. (*See* Order, Docket No. 39.) In that same order, however, the Magistrate Judge ordered counsel for all parties to hold a joint Rule 26(f) conference and submit a joint case management report, including "[p]roposals for the submission of common briefing on issues to be raised in dispositive motions" and a discussion of the "usefulness of case-management devices such as bellwether trials or grouping of some cases by common defendants[.]" (*Id.* at 18.) This case is subject to a coordinated discovery schedule and coordinated discovery motions. (*See, e.g.*, Pretrial Conf., Docket No. 53; Order, Docket No. 54.)

Despite this Court's and the Magistrate Judge's efforts at coordination, Stryker nonetheless insists that *inefficiencies* have resulted from plaintiff's "[u]ndaunted" efforts

at consolidation. (Defs.' Reply at 6, Docket No. 46.) It suggests that all cases pending before this Court that "do not have any connection to Minnesota," involve plaintiffs represented by Newman's counsel, and "involve only Stryker" as a defendant be transferred to alternative venues. (*Id.* at 15.)

This Court may presently decide only the instant motion, and every proposed transfer requires an individual evaluation. *See Terra Int'l,* 119 F.3d at 697. The Court doubts that Stryker will realize no efficiencies from this Court's coordinated handling of pretrial proceedings in this case with other cases involving the same allegedly defective product. While the proximity of Michigan to Ohio indicates greater convenience to Stryker, this Court's coordination of discovery with related cases pending in this district indicates less convenience. Section 1404(a) permits transfer only to "a more convenient forum, not to a forum likely to prove equally convenient or inconvenient." *Van Dusen*, 376 U.S. at 645–46. Stryker has not established that it would be significantly more convenient to proceed with this case in Ohio than in Minnesota at this point in the litigation.

Turning to Newman's convenience, in *Ivey* this Court acknowledged the paradox of justifying transfer to a plaintiff's home state "based on the convenience to the plaintiff, who is presumed to have assessed the convenience of the various forums in determining where to bring suit." Slip op. at 8 (citing *CBS Interactive Inc. v. Nat. Football League Players Ass'n, Inc.*, 259 F.R.D. 398, 409 (D. Minn. 2009)). The fact that Newman chose Minnesota as a forum is not determinative of her convenience in and of itself, *see In re Apple, Inc.*, 602 F.3d 909, 913 (8th Cir. 2010) (per curiam) (quotation and citation

omitted), but like the plaintiffs in *Ivey*, Newman also argues that this district is more convenient for pretrial purposes because of the efficiencies of coordinating discovery with other pain pump plaintiffs who chose to file suit in Minnesota and whose cases are pending before this Court. Slip op. at 8.

The Court recognizes that Newman's decision to litigate in Minnesota is entitled to "significantly less deference" because she does not reside here and the facts underlying her claims did not occur here. *Nelson*, 58 F. Supp. 2d at 1026. Stryker cites a recent Eighth Circuit case in which the Court accorded a nondomestic plaintiff's choice of forum "minimal weight" because there was "no relevant connection" between it and the parties, potential witnesses, or the dispute. *In re Apple*, 602 F.3d at 913. That case, however, involved a nondomestic plaintiff and was not subject to coordinated discovery with any other case alleging similar injuries. *Id.* While the Court accords less deference than is customary to Newman's choice of forum, "'[l]ess' deference does not mean 'no' deference." *Burks v. Abbott Labs.*, Civil No. 08-3414, 2008 WL 4838720, at *2 (D. Minn. Nov. 5, 2008). "Defendants must still overcome a presumption in favor of the [plaintiff's] selection of Minnesota as a litigation forum." *Id.; cf. In re Apple*, 602 F.3d at 913 (assumption that the plaintiff's choice of venue "will be a convenient one[]" for plaintiff undermined where plaintiff "hails from a foreign nation").

Stryker's protestations to the contrary, this district's coordination of pretrial matters in the pain pump cases suggests that Newman's choice of forum may prove more convenient for Stryker than Ohio would be. *See Ivey*, slip op. at 7. Even according little weight to Newman's choice of forum, Stryker has not established that the alleged

inconvenience to it in continuing pretrial proceedings[3] in Minnesota "substantially outweighs the inconvenience that plaintiff would suffer if venue were transferred." *Nelson*, 58 F. Supp. 2d at 1026.

### B.    Convenience of the Witnesses

The second factor – convenience of the witnesses – likewise does not currently weigh heavily in favor of transfer. As Stryker argues, every specific individual identified in Newman's discovery responses as having relevant information about her claims, including Dr. Klimo, is located in Ohio. (Defs.' Reply Mem. at 13, Docket No. 46.) However, "sheer numbers of witnesses will not decide which way the convenience factor tips." *Terra Int'l*, 119 F.3d at 696 (quotation omitted). This Court "must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum." *Graff v. Qwest Commc'ns Corp.*, 33 F. Supp. 2d 1117, 1122 (D. Minn. 1999).

At this early stage of the litigation, as in *Ivey*, "it is unclear . . . how important [the treating surgeon's] testimony" or **any** other testimony will be. Slip op. at 9. "[A]s in other cases alleging product defects and corporate practices such as marketing programs and applications for FDA approval, 'much of the relevant evidence may come from corporate employees and documents.'" *Id.* (quoting *Voss v. Johnson & Johnson*, Civil Nos. 06-3728, 07-1862, 07-1584, 07-2999, 07-1661, 2008 WL 697474, at *3 (D. Minn.

---

[3] Newman "does not object to her case being transferred to her home district at the close of discovery." (Pl.'s Mem. at 3, Docket No. 41.)

Mar. 12, 2008)).  Witnesses residing in Michigan, where Stryker is headquartered, will likely be compelled to travel regardless of venue – although Minnesota would likely prove somewhat more inconvenient than Ohio for them.  However, the parties have yet to identify expert witnesses.  Their testimony may prove paramount and the experts may be more readily available to testify in Minnesota rather than Ohio.

Stryker also argues that crucial witnesses reside outside the one hundred mile subpoena power of this court, but the Court does not weigh this factor heavily.  *See Nelson*, 58 F. Supp. 2d at 1027.  Stryker has not identified any potential witnesses "who might be unwilling or unable to provide testimony in Minnesota." *Howard v. Judge Law Firm*, Civil No. 09-1644, 2010 WL 2985686, at *4 (D. Minn. July 26, 2010); *see also Ivey*, slip op. at 10.  Moreover, busy physicians such as Dr. Klimo "frequently rely on videotaped depositions to provide testimony, even when they reside in a district in which a Court has subpoena power to compel live testimony." *Burks*, 2008 WL 4838720, at *3.  "Without specifying which third-party witnesses defendants intend to call, it is difficult for the Court to determine how material and important their testimony will be." *Id.*

Fact discovery in this case is not scheduled to conclude until September 1, 2011, and Newman need not identify any expert witnesses until October 1, 2011.  (Order at 15–16, Docket No. 54.)  As the Court noted in *Voss*, "the relevant witnesses and evidence may change as the factual disputes and legal claims in these actions are developed through discovery."  2008 WL 697474, at *3.  When discovery concludes it may become clear that the convenience of crucial witnesses urges transfer, and the Court does not

intend to preclude Stryker from renewing its motion to transfer venue at a later time.  *See id.*  At the present stage, however, Stryker has not met its burden of establishing that the convenience of the witnesses in this case weighs **strongly** in favor of transfer.

### C.    Interest of Justice

"The interest of justice factor is weighed heavily when considering a motion under § 1404(a)."  *Travel Tags*, 690 F. Supp. 2d at 794.  In assessing this factor, the Court considers "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law."  *Terra Int'l*, 119 F.3d at 696.

1.    As discussed above, at this stage in the litigation a venue transfer will not enhance judicial economy.  While the pain pump cases have not been consolidated, discovery in this case is still subject to coordination with numerous other pain pump cases Stryker is defending in this Court.  (*See, e.g.*, Pretrial Conf., Docket No. 53; Order, Docket No. 54); *cf. In re Ambulatory Pain Pump*, 2010 WL 1790214, at *3 (denying consolidation in part because "the constituent actions are at widely varying procedural stages").  As was true in *Ivey*, although there are two other actions against Stryker raising "nearly identical issues" currently in the district court for the Northern District of Ohio (Defs.' Mem. at 7, Docket No. 15), that court has not "taken steps to enhance judicial economy with respect to those cases."  Slip op. at 11.  Those cases are before two different judges and appear to be in varying procedural postures.  *See Mayle, et al. v.*

*Stryker Corp., et al.*, No. 09-cv-1991 (N.D. Ohio Order on Mot. to Dismiss Mar. 23, 2010); *Crisp v. Stryker Corp., et al.*, No. 09-cv-2212 (N.D. Ohio Order on Mot. to Dismiss June 18, 2010). Stryker has not met its heavy burden of showing that the interest of justice in judicial economy currently warrants venue transfer in the current circumstances.

2.      Although the Court does not accord it heavy weight given the circumstances of this case, the plaintiff's choice of forum nonetheless also militates against transfer. *See Ivey*, slip op. at 12.

3.      As for the cost of litigation, Stryker has not shown that, at this point in the litigation, litigating in Ohio will prove substantially more cost effective than litigating in Minnesota where it is defending against similar suits. *See id.* Newman, however, argues that transferring this case will increase her litigation costs because of the cost efficiencies she realizes through coordinated discovery with other plaintiffs in this district. (Pl.'s Mem. at 3, Docket No. 41.)

4.      As Stryker concedes, Newman may enforce a judgment in any judicial district so the "enforceability of a judgment" factor is neutral. (Defs.' Mem. at 9, Docket No. 15.)

5.      To the extent that Stryker's inaccessibility to live testimony may impede a fair trial, "at this stage in the litigation such unfairness is only hypothetical." *Ivey*, slip op. at 13.

6.      As discussed below, the Court concludes that Ohio substantive law governs this case. Newman does not explicitly challenge the application of Ohio law in her brief

(*see* Pl.'s Mem. at 4, Docket No. 41.), but it may prove ruinous to her claims. Minnesota law provides for a six year limitations period on negligence claims and a four year period for strict liability claims. Minn. Stat. § 541.05. Ohio law generally imposes a two year statute of limitations on product liability claims, although a claim for bodily injury caused by "ethical medical devices accrues upon the date on which the plaintiff is informed by competent medical authority that the plaintiff has an injury that is related to the exposure, or upon the date on which by the exercise of reasonable diligence the plaintiff should have known that the plaintiff has an injury that is related to the exposure, whichever date occurs first." Ohio Rev. Code § 2305.10(B). Newman's second shoulder surgery was June 12, 2007, but she alleges that she did not learn that the pain pump could cause chondrolysis until August 2007 and was "not informed by competent medical authority that her injury was related to pain pumps until some time after November 2007." (First Am. Compl. ¶ 6, Docket No. 2.) She filed suit on October 14, 2009. (Compl., Docket No. 1.) Under Minnesota law, if a claim arising on or after August 1, 2004 is substantively based "upon the law of one other state, the limitation period of that state applies[.]" Minn. Stat. §§ 541.31 subd. 1(1), 541.34; *cf. Fleeger v. Wyeth*, 771 N.W.2d 524 (Minn. 2009) (cases arising out of personal injury claims before August 1, 2004, and properly brought in Minnesota are subject to Minnesota's statute of limitations).[4]

---

[4] The question of whether this case is time barred is not presently before the Court. *See Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008) (statute of limitations is typically an affirmative defense which defendant must plead and prove); *see also Murphy v. I-Flow Corp.*, Civil No. 10-674, 2010 WL 2985707, at *2 n.3 (D. Minn. July 26, 2010) (declining to opine, in

(Footnote continued on next page.)

There is no "conflict of law" for purposes of § 1404(a), however, simply because the "determination of the source of the substantive law governing plaintiffs' cause of action . . . is potentially outcome determinative." *Oien v. Thompson*, Civil No. 09-3068, 2010 WL 2985032, at *7 (D. Minn. July 26, 2010). Even if this case were transferred to the Northern District of Ohio, Minnesota's choice of law analysis would still apply and therefore dictate the application of Ohio substantive law. *See Eggleton v. Plasser & Theurer Export Von Bahnbaumaschinen Gesellschaft, MBH*, 495 F.3d 582, 586 (8th Cir. 2007) (after a § 1404(a) transfer, "the transferee court applies the choice-of-law rules of the state in which the transferor court sits"). Conflict of law issues consequently do not support transfer.

7.      The advantage of having a local court resolve novel issues of Ohio law seems to militate slightly in favor of transfer. According to Stryker, Ohio courts have not yet decided whether Newman's claim – that the pain pump was defective because of Stryker's failure to warn based on its lack of term testing – is viable under Ohio law. (Defs.' Reply Mem. at 14, Docket No. 46.) In the context of a motion to transfer under § 1404(a), however, generally "courts can just as easily apply the law of another state as easily as their own." *Clergy Fin., LLC v. Clergy Fin. Servs., Inc.*, 598 F. Supp. 2d 989, 995 (D. Minn. 2009) (quotation omitted).

_____

(Footnote continued.)

the context of a § 1404(a) motion, about the applicability of Minnesota's statute of limitations to a pain pump case arising out of injuries from 2007).

"As a general rule, transfer under § 1404(a) should not be freely granted, and this Court has been particularly reluctant to transfer cases out of the District of Minnesota." *Burks*, No. 08-3414, 2008 WL 4838720, at *5. While there are some factors that weigh in favor of venue transfer here, such as the comparative proximity of Stryker's headquarters to Ohio, other factors, such as the judicial economy of coordinated discovery, weigh against transfer. Stryker has not presently met its heavy burden of showing that the balance of the § 1404(a) factors strongly favors transfer. Accordingly, Stryker's motion to transfer is denied.

## II.     MOTION TO DISMISS

Stryker also moves to dismiss Newman's second claim for relief (negligence) because Ohio has abrogated common law product liability claims. (Defs.' Mem. at 18; Docket No. 15.) This Court must determine, as a preliminary matter, whether Ohio or Minnesota substantive product liability law governs in this case.[5]

"Federal courts sitting in diversity apply the choice-of-law rules of the forum state." *Cicle v. Chase Bank USA*, 583 F.3d 549, 553 (8th Cir. 2009). Applying Minnesota's choice-of-law rules, the first inquiry is "whether the choice of one state's law over another's creates an actual conflict." *Jepson v. Gen. Cas. Co. of Wis.*, 513 N.W.2d 467, 469 (Minn. 1994). "A conflict exists if the choice of one forum's law over the other will determine the outcome of the case." *Burks v. Abbott Labs.*, 639 F. Supp. 2d

---

[5] Newman addressed Stryker's dismissal motion in only summary fashion without citation to caselaw and has not contested the application of Ohio substantive law to this case. (*See* Pl.'s Mem. at 4.)

1006, 1011 (D. Minn. 2009) (quoting *Nodak Mut. Ins. Co. v. Am. Family Mut. Ins. Co.*, 604 N.W.2d 91, 94 (Minn. 2000)).

Minnesota permits common law product liability claims, while product liability claims in Ohio are governed by the Ohio Product Liability Act ("OPLA"). *See* Ohio Rev. Code §§ 2307.71-2307.80. "[W]hen the Ohio General Assembly enacted the current version of the OPLA, which became effective on April 7, 2005, it abrogated all common law claims relating to product liability causes of actions." *Evans v. Hanger Prosthetics & Orthotics, Inc.*, No. 09-cv-1344, 2010 WL 3259871, at *8 (N.D. Ohio Aug. 18, 2010); *see also* Ohio Rev. Code § 2307.71(B) ("Sections 2307.71 to 2307.80 of the Revised Code are intended to abrogate all common law product liability causes of action.").

The OPLA abrogated both Newman's first claim for relief (strict product liability for defective design and failure to warn) and her second claim for relief (negligence). *See Wimbush v. Wyeth*, No. 09-3380, 2010 WL 3256029, at *3 (6th Cir. Aug. 18, 2010) (the OPLA abrogated "**all** common law product liability causes of action" including strict liability for design defects and failure to warn). Stryker concedes that Newman's strict liability allegations "fall[] squarely" under conduct covered by the OPLA, however, and it does not point to any outcome determinative differences regarding the substantive law of strict product liability claims under the approaches of the two states. (Defs.' Mem. at 19, Docket No. 15.)

The question, therefore, is whether there are outcome determinative differences between the OPLA and common law negligence under Minnesota law. Newman's negligence allegations may "fall within the scope of the **conduct** the OPLA defines as

giving rise to a product liability claim." *Redinger v. Stryker Corp.*, No. 5:10 CV 104, 2010 WL 908675, at *2 (N.D. Ohio Mar. 12, 2010) (emphasis added). However, the OPLA does not encompass a negligence claim distinct from any other product liability claim; it does not even incorporate the word "negligence" in its recitation of the specific types of claims to which it applies. *See* Ohio Rev. Code § 2307.71(A)(13)(a)-(c) (the OPLA applies to all claims for damages against a manufacturer or supplier of a medical device for physical injuries arising from: "(a) [t]he design, formulation, production, construction, creation, assembly, rebuilding, testing, or marketing of that product; (b) [a]ny warning or instruction, or lack of warning or instruction, associated with that product; [or] (c) [a]ny failure of that product to conform to any relevant representation or warranty").

Before the OPLA was amended in 2005, three separate theories of product liability existed in Ohio: "(1) under the Ohio Product Liability Act; (2) negligence; and (3) breach of warranty." *Wimbush*, 2010 WL 3256029, at *3 (quoting Christopher M. Ernst, et al., *Baldwin's Ohio Practice, Ohio Tort Law*, § 6.1 (2009)). The Ohio Supreme Court concluded that claims for common law negligent design survived the pre-2005 OPLA, rejecting a lower court's determination that the Ohio General Assembly "had chosen to eliminate this type of action against a manufacturer." *Carrel v. Allied Products Corp.*, 677 N.E.2d 795, 798 (Ohio 1997); *see also id.* at 798 n.1 (noting that "[w]hile products liability cases [in Ohio] often involved issues of negligence as well as strict liability, these doctrines have consistently been regarded as complementary but distinct").

The 2005 amendments, however, superseded *Carrel*. *See Miles v. Raymond Corp.*, 612 F. Supp. 2d 913, 920 (N.D. Ohio 2009). The General Assembly clarified that the OPLA abrogated all common law product liability claims under Ohio, *see* Ohio Rev. Code § 2307.71(B), without expanding the OPLA's definition of a product liability claim. Accordingly, Newman's claim for negligence is not cognizable as distinct from her strict liability claim under Ohio law. (*See* Am. Compl. at 5-6, Docket No. 2 (encompassing claim for negligent design).) In contrast to Ohio, Minnesota permits an independent claim for negligence. *See Gray v. Badger Min. Corp.,* 676 N.W.2d 268, 273 (Minn. 2004); *see also Hauenstein v. Loctite Corp.*, 347 N.W.2d 272, 275 (Minn. 1984) (plaintiff asserting negligence and strict liability claims based solely on failure to warn "can plead and prove at trial either or both theories" and then announce on which theory the case will be submitted to the jury). There is therefore an outcome determinative conflict under the states' product liability laws. *See Brewer v. Dodson Aviation*, 447 F. Supp. 2d 1166, 1177 (W.D. Wash. 2006) (concluding that an actual conflict existed between the substantive product liability laws of Washington and Ohio in part because only Washington recognized a claim for negligent design).

OPLA is also more restrictive than Minnesota common law with regard to the availability of damages in product liability cases. *Compare* Ohio Rev. Code § 2315.21(D)(2)(a) (limiting punitive and exemplary damages to twice the amount of compensatory damages awarded), *with* Minn. Stat. § 549.20 (permitting an award of punitive damages without monetary cap in a tort case where "clear and convincing" evidence establishes that a defendant acted with "deliberate disregard for the rights or

safety of others"); *see also* Ohio Rev. Code § 2315.18(B)(2) (limiting recovery of noneconomic damages in certain circumstances). Stryker therefore argues that a potentially outcome determinative conflict exists regarding the amount of available punitive damages. *See Burks*, 639 F. Supp. 2d at 1012 (conflict with Minnesota law existed where, in addition to a conflict regarding substantive causes of action, punitive damages were entirely unavailable under Louisiana law).

Under Minnesota law, however, the Court reaches the second step of the conflict-of-law analysis – whether each state's statute may be constitutionally applied – "only if the conflicting rules of law are substantive rather than procedural." *Christian v. Birch*, 763 N.W.2d 50, 57 (Minn. Ct. App. 2009); *see also Nesladek v. Ford Motor Co.*, 46 F.3d 734, 736 (8th Cir. 1995) (describing the question of "whether the law at issue is substantive or procedural" as "the first issue that must be resolved" in a Minnesota conflict-of-law analysis). Laws addressing remedies are generally considered procedural, rather than substantive. "In Minnesota [i]t has long been recognized that substantive law is that part of law which creates, defines, and regulates rights, as opposed to adjective or remedial law, which prescribes method [sic] of enforcing the rights or obtaining redress for their invasion." *Id.* (quotations omitted); *see also Stern v. Dill*, 442 N.W.2d 322, 324 (Minn. 1989) (concluding that a requirement that an affidavit identifying experts be filed within 180 days is procedural because "it does not change [the plaintiff's] basic right to sue for negligence"). Since this Court concludes that a conflict between the states' substantive laws exists because the OPLA excludes Newman's independent claim for

negligence, there is no need to decide whether the applicable punitive damages statutes are substantive or procedural.[6]

Because there is a conflict between product liability law in Ohio and Minnesota, "we must consider whether the law of both states can be constitutionally applied." *Jepson*, 513 N.W.2d at 469. "[F]or a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13 (1981). We agree with Stryker's unopposed assertion that the application of Minnesota law in the circumstances of this case would be arbitrary and fundamentally unfair.[7] Because Ohio substantive law governs this case and the OPLA clearly abrogates common law negligence claims for product liability actions, Stryker's motion to dismiss Newman's second claim for relief (negligence) is granted.

---

[6] The Court likewise does not decide whether the conflict between Minnesota's statute of limitations and the OPLA's limitations period provides an additional basis for the application of Ohio law to Newman's product liability claims. The Minnesota Supreme Court has "considered statutes of limitations to be procedural without exception." *Fleeger*, 771 N.W.2d at 528. Lower courts in Minnesota, however, have considered a limitations period substantive "when it applies to a right created by statute, as opposed to a right recognized at common law." *Danielson v. Nat. Supply Co.*, 670 N.W.2d 1, 6 n.2 (Minn. Ct. App. 2003); *see also Graham v. Breeden*, Civ. No. 10-434, 2010 WL 3169835, at *2 (D. Minn. Aug. 11, 2010). While neither party addressed this issue, arguably Ohio's statutory limitation on Newman's product liability claims is substantive while Minnesota's is procedural for purposes of evaluating a conflict of law.

[7] Accordingly, the Court need not evaluate the five factors relevant to determine which state's law governs where both states' substantive laws can be constitutionally applied. *See Jepson*, 513 N.W.2d at 470 (citing *Milkovich v. Saari*, 203 N.W.2d 408, 412 (1973)).

"Courts typically dismiss common law causes of action abrogated by the OPLA without prejudice to allow plaintiffs the opportunity to re-plead their common law claims under the applicable provision of the OPLA." *Evans*, 2010 WL 3259871, at *10; *see also Redinger*, 2010 WL 908675, at *3 (allowing the plaintiff leave to submit an amended complaint recharacterizing common law negligence and breach of warranty claims under relevant provisions of the OPLA even though defendants' motion to dismiss was unopposed).

While Stryker has not moved to dismiss Newman's first claim for relief, the Court presumes that if Newman chooses to submit an amended complaint she will remedy defects with regard to her strict liability claims as well. *See Evans*, 2010 WL 3259871, at *7-10 (ordering plaintiff alleging strict liability under the OPLA to replead defective design under the correct part of the statute and dismissing without prejudice all other common law product liability claims sua sponte as abrogated by the OPLA).

## ORDER

Based on the foregoing of all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Defendants' motion to transfer venue [Docket No. 13] is **DENIED without prejudice**.

2.      Defendants' motion to dismiss plaintiff's second claim for relief (negligence) [Docket No. 13] is **GRANTED without prejudice** to Newman to re-plead

her claims, if any, under the OPLA within fourteen days of the date of this Order, after

which Stryker may file a responsive pleading.


DATED:   September 30, 2010                    _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                            JOHN R. TUNHEIM
                                                              United States District Judge